Good morning, Your Honors. May it please the Court. Oh, I'm sorry. My name is Thomas Mayer. I am the counsel for Mr. Li, Wenzhuang Li. There are three basic issues here which we need to address. The first two are rather brief. The third one requires a little more explanation. The very first is that the Court initially found that Mr. Li's harms did not rise to the level of persecution. Now the controlling law on this would be Guo v. Ashcroft, in which case a Chinese citizen was arrested, detained twice, physically abused, and forced to renounce his religion. In this particular case, we also have arrest, detainment for seven days, two very brutal beatings. He was forced to renounce a political right, that of protest. He lost his freedom, he had to accept supervision, and he lost his job as a result of this. Now, in this particular case, we have in his first interrogation approximately 20 hits on the back with a police baton. He was dragged to the floor, he was kicked seven or eight times by one of the policemen, and he was punched approximately 12 times. This was repeated two days later when the bruises were still fresh, when he received approximately another 20 belts or hits with the baton. He was whipped with a belt approximately seven to eight times, and he received additional kicks and punches by the police. He was ultimately forced to sign a confession, as in Guo, and he was forced to pay a 5,000 RMB fine. In the record, it states that he was making about 1,000 RMB a month, so this would be about a two-week fine, which is definitely significant. He lost his employment. He was barred from future employment by the virtue of the fact that this was considered a crime, and no government-owned corporation would hire him. Now, this is distinguished from Corablina, which the government cited, in that this is not a very... Are you familiar with Huell v. Holder, 652 Fed 3rd, 1011, 9th Circuit case, which has facts very, very similar to yours? I'm not, sir. All right. But in Corablina, which the government stated... I'm sorry, strike that. It was actually Kovac v. INS, which is 407 F 2nd, 102 to 107. We're distinguishing this case from that in that this is not a disadvantage, a mere disadvantage, or a trivial inconvenience. This man suffered two very severe beatings, and yet the government, or the court rather, chose to state that his suffering did not rise to the level of persecution. Counsel, Judge Gould, if I could interject. Certainly. The question I have is, given these very substantial evidence of persecution, in my view, but how do you address the issue of the nexus to a protected ground? Well, Your Honor, the basis for his arrest was that he and his group were protesting government corruption, and they, after a series of petitions to the local government, were completely ignored. Now, after their... Was there any support in the record for the BIA's statement that the motivation of the authorities for respondent's arrest was to maintain order in public facilities? Well, this was... It actually took place outside a public facility, but the court initially stated that because of this disruption and the fact that he didn't have a permit to conduct this protest, that it was, in fact, a criminal matter. Given the fact that there were over 200 people that were facing severe hunger and other hardships as a result of this government corruption, that were trying to peaceably, and it was always peaceably, seek redress, and they were beaten up for it and ultimately lost their jobs. You know, if you want to call it imputed political opinion, I would agree with that. I think what Judge Gold was getting after is, I think... So what evidence do we have as to the... Regardless of what the BIA said, that it was to instill public order, what is the evidence in the record that you're relying on that shows it was for another... It was on account of his political views, for example? Well, the... When he was being beaten, he was told that either he would confess or he would die. Okay, so... And this was just for supposedly disturbing the peace. So I'm looking at the IJ's opinion, and he said... The IJ says that... No, he was found... Was he found credible or not? He was found credible by both the BIA and the court. Was that an express determination? Yes, it was. Okay, so the IJ says that the respondent testified that he was accused of anti-government activities. Right, because he was exposing government corruption, so they accused him of anti-government activity.  And it could have said anything. But what the government... I'm sorry, what the court focused on was his... The charge of disrupting the public order. And what case do you rely upon to say that there was... Was his political opinion or anti-government opinion? Well, it's definitely analogous to Grava, which I'm sure the court's familiar with. But certainly in Grava, we have political corruption by the government. We have direct punishment and retribution for exposing the corruption. And we have severe physical abuse. And it's on all fours. The second issue, well, we basically covered it, that of nexus. Do you want to save some time for rebuttal? Well, there was a third issue. What's the third issue? The third issue is the lack of corroboration. And that, Your Honors, is controlled, of course, by the Real ID Act. Now, the court initially faulted him for not producing sufficient corroborating evidence, despite the fact that he was found credible. Now, it also states in the record that he testified that the terms of his release from jail after he paid the fine was that he could have no contact with his former workers. He could not file any more petitions. He had to accept local surveillance. And he had to report weekly to the police department. Now, he did not come to this country with a trove of documents to support his case. His family is still under observation, still under supervision by the Neighborhood Committee. And there is no way that he can contact anyone to obtain affidavits for what happened to him. Counsel, why is Judge Gould again? Why do we need to worry about that if he's been determined to be credible, which I thought meant we accept his story? That's why I'm here, Your Honor. I don't understand how the court could find him credible on his testimony and yet say he doesn't have – I know that under the Real ID Act, the Act says that the judge can demand more evidence. But it also says unless the applicant does not have the evidence, which he clearly does not, or we would have presented it, and he cannot reasonably obtain the evidence, here he cannot obtain that evidence. It would put his family in danger. It would put his coworkers in danger. The Internet, the mails, all of it, he can't trust it. There are lives that matter, and he doesn't want to bring any trouble or worse onto his family and his associates back there. This is one of the problems that we have, of course, in asylum law, is that oftentimes the documents are very difficult to come by, and particularly from China. And that's where most of my clients come from. Thank you. Thank you, counsel. You're over your time now. Thank you. Thank you. Good morning. Good morning. May it please the Court. My name is Lori Warlick, and I am here on behalf of the United States Attorney General. The Court should deny the petition for review because contrary to Petitioner's assertions, nothing in the record compels a contrary conclusion than that which was reached by the agency. Before I proceed into my affirmative defense of this case, I would like to clarify certain points that Petitioner has raised. First of all, there was never a corroboration finding entered into this case. There is no lack of note that I.J. did not assert that his lack of any lack of corroboration entered her conclusion that he did not meet his burden of proof. Instead, she found him credible but denied his request for asylum and withholding of removal on the merits regarding the harm he experienced in the past did not rise to the level of persecutory harm, that the harm was not perpetrated on account of a protected ground, and that regardless, any fear of future harm might be subjectively genuine but would not be objectively reasonable. And there is another very important point, critical before we proceed with anything else. There is absolutely nothing in the record that says that the company that the Petitioner worked for was owned by the government. He repeatedly referred to it as a company, as a business. The boss was the president. There was a board of directors, the chairman of the board, the registry in the household registry in the record shows that the company was the textile factory company limited, suggesting a typical corporate structure. But most importantly, when he was asked by the DHS council, do you have proof of who owned your company, he said, I quote, I don't know. We have a board of directors and there was a chairman of the board of directors. As far as ownership, I don't know. And again, he was the chief of operations. He attended many of the dinners, or at least some of the dinners, the lavish dinners that he said that the chairman of the board was misappropriating the funds to provide. If the company was owned by the government, he would know it. He never asserted that anywhere. Counsel, if I could ask you this, on the point you're arguing right now, why is it that to be expressing political opinion, it's necessary that the company be government owned? Couldn't just a general statement about being against corruption with regard to private companies be a political opinion? Well, respectfully, Your Honor, the reason it's important is because it indicates at what point the government is involved in this case when they become interjected in the case. And sure, an opinion about corruption may be a true opinion, but unless it involves government corruption or the way the government deals with private corruption, it would not necessarily amount to a political opinion or one imputed to him. And I don't believe that this record suggests that that would be, that's not his theory of the case. Okay. Thank you. Thank you. In fact, it's clear that the government only became involved in this when he filed a petition for redress after he was laid off from his employment. He was laid off as part of, at the second of two large groups because of this misappropriation or embezzlement perhaps by this company chairman. And he filed a petition with the labor bureau in the district, which I assume is something akin to like the national labor relations board or something of that sort. Because apparently he thought that that bureau could provide him some sort of redress for the. Is that a government bureau? It's a government bureau. Yes. Okay. And so after that, he gets beat by the authorities, right? He is a beat by police officers, not anyone in the labor bureau, but the labor bureau, he goes, he's filed the petition that does bring in the government into his case. However, it does. I don't believe that there's any evidence in the record that the petition was ignored. It simply hadn't been adjudicated yet. He, he testified that he felt that it was ignored, but when he went to the, he had organized a group of about a hundred protesters to go down to the labor bureau to demand a more prompt resolution of his petition. He said, it's going down to the government, right? It is. Yes. He goes into the government building. He says they all at that point, he says they all went in a hundred people. And that the employees were so surprised they stopped working. They said, Oh, okay. We understand. Give us some time, give us a few weeks and we will, we will adjudicate your or address your petition. Unfortunately, they didn't do that in a few weeks. It took a few months at least until the point that they became frustrated again, again. And he organized a group of people twice that size to again, go to the government building, much like this one to go to a government building to approach, to protest. And I don't understand. I don't see anywhere in the record where it says that the majority of the people remained quietly outside that is in the petitioner's pleadings, but it's not in his testimony or his statement. The only thing he said was that 20 of those people demanded to speak to the district, the leader of the district government that would be the one responsible for resolving his petition, their petition. And at that point they were turned away. Police were arrived. They were arrested. Three of the leaders were arrested. And that was when he was detained and he was subject to abuse. He was detained for approximately one week. He suffered two, he was interrogated briefly, only 20 minutes each time on each of two days. And he suffered, he did suffer significant abuse. He was, he was hit. He was punched. He was kicked both times. However, he was released about after a week. And although he could not obtain employment after that, he said it's, he was not barred from future employment. And that was never, he never asserted that the police officers said you can't work for anyone around here again. Instead, he actually testified that, that he, let's see, it could not find other employment because people were just afraid to employ him. It wasn't that they were told not to, they were afraid to, they were afraid to employ him regardless of the salary demands that he made. However, he still managed. There's no, there's no testimony in the record that he was rendered homeless, that he was required to go on public assistance, anything that would, in my mind, equate to the poverty that he suggested he suffered. Instead, he was able to find, I believe he went through odd, sort of odd jobs. He collected trash, anything to support his family with, you know, I'll do credit to him that he was able to do that. But the question here again is whether that harm rose to level persecution. And of course, that falls somewhere on the spectrum between Gu and Guo. But I believe it's far more akin to Gu than to Guo. And there's a lot of unpublished case law regarding the level of harm, not rising to the level of persecution, but those cases don't actually describe the harm that the court found to be not compelling. So it's hard for me to address that. But it's sort of an ugly, an ugly task to determine whether someone's harm is severe enough to rise to the level of persecution. But these are fact-intensive cases, and that is the job of the agency to engage in that task, to look at the facts, compare it to the case law, and determine whether the harm was so severe. Did you mention Hu in passing just now? Yes, I did. Okay. I didn't find it in your brief. I don't think. I believe I. Well, you don't have to search now. I recall seeing it. Oh, I'm sorry, I did. Yes, Gu is on several pages, and 9, 14, 15, 16. But I don't believe, I don't know if it was in the opening brief by Petitioner, but, and also Guo, which is the one that the court determined that the harm was so severe that it compelled the conclusion. And. Counsel, I thought, I thought that Judge Pearsall was talking about a case called Hu. I think it's Hu. Hu. Oh, I'm sorry. Hu. 652, Fed 3rd, 1011. I, I cited that one, 17, 18, but maybe only in a string cite, but I can address who, who was, I'm sorry, I thought you said Gu. Who was the case where there was a question of whether the arrest was a pretext for the harm, where maybe the, maybe the arrest superficially appeared to be legitimate, but it was just a pretext for some sort of abuse that would have a nexus. But the court found that that did not compel the conclusion that the actions were on account of a protected ground, if I recall correctly. And in that case, importantly, it was very clear that Mr. Hu worked for a mid-sized nationally owned company, whereas his complaints about the corruption at that company would certainly implicate the government in their response to corruption. That's not present in this case. There were similar facts. There was otherwise about the layoffs due to misappropriation. There were protests detained. And in that case, although the court did not address the harm level, he was not given food or water. He was placed in a cell with six others. He was detained for 10 days. Again, those are sort of facts that mitigate towards a more severe punishment. He was beaten as well. I believe I'm running out of time, unfortunately. So I will simply ask that the court deny the petition for review. All right. Thank you, counsel. Lee versus Sessions will be submitted.
judges: Wardlaw, Gould, Piersol